Lon A. Jenkins (4060)
Tami Gadd (12517)
MaryAnn Bride (13146)
Katherine T. Kang (14457)
OFFICE OF THE CHAPTER 13 TRUSTEE
465 South 400 East, Suite 200
Salt Lake City, Utah  84111
Telephone: (801) 596-2884
Facsimile: (801) 596-2898
Email: utahtrusteemail@ch13ut.org

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>   NATALIE ALLRED<br><br>Debtor. | Case No. 21-25352<br>Chapter 13<br>Hon. Peggy Hunt |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR ORDER REDUCING CLAIM OF SELECT PORTFOLIO SERVICING AND RE-ALLOCATING DISTRIBUTION OF FUNDS**

Lon A. Jenkins, Chapter 13 Trustee, by and through counsel, hereby files this supplemental memorandum in support of the Motion for Order Reducing Claim of Select Portfolio Servicing and Re-Allocating Distribution of Funds.  At a hearing on January 31, 2024, the Court raised concerns about the legal basis for the relief requested by the Trustee and requested additional briefing.  Specifically, the Court has requested briefing primarily on the propriety of disbursing funds on hand in cases dismissed after confirmation to creditors rather than debtors.  In the Motion filed on December 20, 2023 [Docket No. 97], the Trustee set forth the relevant facts and posture of the Debtor's case.  In this Memorandum the Trustee

incorporates herein the previous Motion and supplements the facts, background and arguments with the following.

FACTS

1. The Debtor filed her petition for relief under Chapter 13 on December 21, 2021.  The current case is the Debtor's eleventh bankruptcy case filed since 2008. [1]  A table outlining the Debtor's previous bankruptcy cases and the outcome of those cases is attached hereto as <u>Exhibit 1</u>.

2. The Debtor's Schedule A/B lists real property at 1629 North Blue Peak Road, Tooele UT 84074 as her residence. This real property has been involved in every bankruptcy filing by the Debtor. The arrearage on the mortgage generally increased throughout each successive bankruptcy case.

3. The Debtor's Chapter 13 plan ("Plan") filed December 21, 2021, provided for payments of $940 for a minimum of 36 months to pay the mortgage arrears as shown in Part 3.1 of the Plan and zero return to unsecured creditors in Part 5.1.  A notice of modified Plan was filed on June 10, 2022, proposing payments of $940 for six months, increasing to $975 for remainder of plan term.

4. The Debtor's filed Schedule D listed Select Portfolio Servicing as the first mortgage holder on Debtor's real property.  No other mortgage holders on the real property were listed on Schedule D.

---

[1] 08-26340; 09-31922; 11-32035; 14-22950; 14-30538; 15-24808; 17-28700; 18-29576; 19-29242; 21-21344; 21-25352.

5. The Debtor is below the median income for the same size household for the state of Utah pursuant to her Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period ("Form 122C-1").

6. On January 11, 2022, Deutsche Bank National Trust Company ("Deutsche Bank") filed a Motion for Relief from Stay including *in rem* relief under § 362(d)(4)(B). The motion was resolved by an agreed order which provided that if the terms of the order were not complied with, relief from stay would be granted without further hearing upon the filing of a declaration and order, and would include *in rem* relief.

7. On February 28, 2022, Deutsche Bank filed a request for notice for Select Portfolio Servicing. An Appearance of Counsel was filed March 13, 2023, listing Halliday Watkins & Mann as counsel for Deutsche Bank National Trust Company.

8. The confirmation hearing on the Debtor's Plan was rescheduled several times.

9. On August 31, 2022, Global Loan Servicing, Inc. ("Global Loan Servicing") filed claim 9 as a secured claim in the amount of $55,173.48 for a second mortgage on Debtor's real property. The claim indicated the full amount as arrearages on the second mortgage. Global Loan Servicing filed an objection to confirmation on that same day.

10. At the confirmation hearing on September 1, 2022, the Court requested counsel for the Debtor to submit a supplemental brief addressing the issues of good faith and feasibility given the Global Loan Servicing secured claim. The subsequent brief, filed on September 14, 2022, stated that Global Loan Servicing was initially listed as an unsecured creditor but, upon further investigation, it was discovered that Global Loan Servicing's lien remained on the property. The Debtor was unable to propose a plan to

pay the secured claim in full, but Global Loan Servicing would retain its lien rights and

confirmation should be granted.

11. Global Loan Servicing withdrew its objection to confirmation on September 22, 2022.

On that same date, Global Loan Servicing filed a Motion for Relief from the Stay which

was granted on October 17, 2022. Global Loan Servicing subsequently amended its claim

to an unsecured deficiency balance of $55,173.48 on April 14, 2023.

12. The Debtor's Plan was confirmed on February 21, 2023 with the Order Confirming

Debtor's Chapter 13 Plan ("Confirmation Order") entered on April 26, 2023.

13. The Confirmation Order provides for payments of $940 for 6 months, $975 for 8 months

increasing to $1,055 for remainder of the Plan term to return no less than $768 to

unsecured creditors.

14. The Confirmation Order has the following provisions applicable to the matter at hand:

A. Paragraph 5: The Plan shall return to nonpriority unsecured creditors the **greater of**
the return provided for below <u>or</u> the pro rata distribution, if any, resulting from the
minimum "Plan Base" calculated as follows: Plan Payments multiplied by the
Applicable Commitment Period (36 or 60 months as stated in Part 8.1 of the Plan)
plus all required contributions of tax refunds and other lump sum Plan contributions.
("Base Provision")

B. Paragraph 29: If this case is dismissed, any Plan Contributions received by the
Trustee prior to the entry of an order of dismissal shall be paid to creditors pursuant to
the Plan, while payments received after the entry of such order shall be refunded to
the Debtor(s).  In making any final disbursement under this paragraph, the Trustee is
hereby authorized to decline to disburse funds on any unsettled, contingent, disputed,
unliquidated, late-filed or otherwise legally insufficient claim, including where a
disbursement check has been return to the Trustee as undeliverable by the United
States Mail. ("Dismissal Provision")

C. Paragraph 31: During the term of the Plan, the Debtor(s) shall not sell or transfer any
property of the estate whether collateral is provided for in the Plan without a Court
order under § 363 and prior written notice to the Trustee.  A creditor shall not accept
any insurance or sale proceeds from collateral provided for in the Plan unless an

amended proof of claim is filed with the Court and prior written notice thereof is provided to the Trustee.  If the Plan provides that the Trustee will make disbursements on a specific claim, and that claim is paid from another source, the Trustee shall nonetheless be entitled to the statutory commission on such amount as would have been received by the Trustee under the Plan.  At confirmation, property of the estate vests pursuant to the terms of the Plan and § 1327.  ("Transfer Provision")

15. On May 10, 2023, the Trustee performed his monthly disbursement, which included payment to Select Portfolio Services in the amount of $6,914.48, in addition to disbursements to other creditors.

16. On May 11, 2023, the day after the May disbursement, the Debtor filed her Motion to Dismiss her case and an accompanying Order.  The Order was entered the same day.

17. At the time of dismissal, the Debtor had paid into her case $12,545, which is less than the 36-month plan base of $36,737 ($940x6, $975x8, $1,055 x 22 + $87 2022 tax refund).

18. On June 7, 2023, the Trustee filed the Final Report and Account.

19. On June 15, 2023, the Trustee received a check from Select Portfolio Services in the amount of $6,914.48 with a letter that indicated it was unable to apply the funds to the Debtor's account but gave no reason for the refund. (Docket 97, Page 5)  The Final Report and Account was withdrawn that same date.

20. Members of the audit department from the Trustee's office reached out to counsel for Select Portfolio Servicing several times from July to December 2023 requesting that an amended claim be filed.

21. Having had no response, the matter was routed from the Trustee's audit department to one of the Trustee's staff attorneys for further investigation in December 2023.

22. Further investigation in the Tooele County Recorder's records revealed that Debtor had executed a Quit Claim Deed on May 11, 2023 to LEM Financial, Inc. – the same day as dismissal of Debtor's Chapter 13 case [Docket No. 97, page 6]. Additionally, it was discovered that the Debtor's real property was subject of a Trustee's Sale by Global Loan Servicing scheduled for May 16, 2023. (See Exhibit 2)

23. It appears that Select Portfolio Services refunded the $6,914.48 previously disbursed by the Trustee due to the Debtor's real property conveyance on May 11, 2023.

24. On December 20, 2023, the Trustee filed this present motion with the Court seeking approval to disburse the funds refunded by Select Portfolio Service to unsecured creditors.

## DISCUSSION

**Courts Disagree Whether Section 349 or Section 1326 Governs Disposition of Funds on Hand in Chapter 13 Cases Dismissed Post-Confirmation**

The underlying issue here compels an analysis of the United States Supreme Court's holding in *Harris v. Viegelahn*, 575 U.S. 510 (2015) and the application of *Harris* in a post-confirmation dismissal context. At the outset, the Trustee submits that since the Supreme Court issued the *Harris* decision in 2015, this Court has uniformly interpreted and limited the application of *Harris* to its facts. That is, *Harris* has only been invoked in this Court to require the balance on hand in a chapter 13 estate to be paid to debtors upon *conversion* to chapter 7, not to dismissed cases. In dismissed cases, the Trustee has, with approval of the Court, consistently paid the remaining balance on hand at the time of post-confirmation dismissal to creditors pursuant to the terms of the confirmed plan, as is required by §1326(a)(2). Certainly, courts have adopted differing views in applying or not applying *Harris* in post-confirmation dismissals and

conversions.  The Trustee submits that applying *Harris* to a case dismissed post-confirmation

unnecessarily extends *Harris'* application beyond its facts and is unwarranted under the

Bankruptcy Code sections that are implicated, as discussed below.

*Harris* involved a confirmed chapter 13 case that converted to chapter 7.  In her majority

opinion, Justice Ginsberg correctly relied on the provisions of §348 of the Code, which

specifically govern the effect of conversion.  Specifically, *Harris* reasoned that under §348(e),

the service of any trustee or examiner is terminated immediately upon conversion.  *Id.* at 519 (the

moment a chapter 13 case is converted to chapter 7, the chapter 13 trustee is "stripped of

authority" to make disbursements to creditors).  Federal Rule of Bankruptcy Procedure 1019

(FRBP) specifically sets forth the terminated Chapter 13 Trustee's duties to wind-up a case

converted to chapter 7 which involve turning over records and filing a final report.  However,

"continuing to distribute funds to creditors pursuant to the defunct Chapter 13 plan is not an

authorized 'wind-up' task." *Id.* at 520.  Therefore, upon conversion to chapter 7, all the Chapter

13 Trustee has authority to do is to return funds on hand to the debtor.  Justice Ginsberg

addressed the argument of the §1326(a)(2) provision providing that if a plan is confirmed, the

funds paid in by a debtor shall be disbursed by the trustee "in accordance with the plan"

reasoning that that upon conversion to chapter 7, no Chapter 13 provision holds sway." *Id.*  The

*Harris* Court concluded that §1326(a)(2) does not govern the trustee's disbursements in a case

converted post-confirmation.

As noted, a number of courts have relied on *Harris* to extend its application to cases

*dismissed* post-confirmation and require that the trustee's funds on hand at the time of dismissal

must be refunded to the debtor and not paid to creditors.  Rather than relying on §348, which was

the lynchpin to the *Harris* decision, those courts appear to rely on §349, which governs the effect

of dismissal.   Those courts rely on §349(b)(3) which provides that "(b) Unless the court, for

cause, orders otherwise, a dismissal of a case . . . (3) revests the property of the estate in the

entity in which such property was vested immediately before the commencement of the case

under this title."   Thus, property (i.e., the trustee's funds on hand at dismissal) revests in the

debtor and is not paid to creditors unless the court orders otherwise.   For instance, Judge Norman

in *In re Demery,* 570 B.R. 220 (Bankr. W.D. La. 2017) reasoned:

> 11 U.S.C. § 349(b)(3) is unambiguous.  At dismissal, all of the debtor's post-
> petition earnings revest in the debtor unless the court orders otherwise for cause.
> This applies to all undistributed funds the Chapter 13 trustee has on hand.  The
> funds must be returned to the debtor, who is the party in whom they were vested
> at the commencement of the case.

*Id.* at 226.   The *Demery* court observed that "[t]his Court's holding is consistent with the

Supreme Court's holding in *Harris v. Viegelahn*, 135 S.Ct. 1829 (2015)." *See also In re*

*Hernandez*, 612 B.R. 20 (Bankr. D. Conn. 2020); *In re Elms*, 603 B.R. 11 (Bankr. S.D. Ohio

2019); *In re Hooks*, 577 B.R. 415 (Bankr. M.D. Ala. 2017); *In re Beaird*, 578 B.R. 643 (Bankr.

D. Kan. 2017); *In re Hamilton*, 493 B.R. 31 (Bankr. M.D. Tenn. 2013)

Other courts have declined to require the refund of a trustee's balance on hand to the

debtor, relying instead on §1326(a)(2) to disburse funds on hand in accordance with the terms of

the confirmed plan.   In pertinent part, that section provides:

> A payment made under paragraph (1)(A) shall be retained by the trustee until
> confirmation or denial of confirmation.  If a plan is confirmed, the trustee shall
> distribute any such payment in accordance with the plan as soon as practicable.

Under the plain reading of §1326(a)(2), once plan is confirmed, the trustee's funds on hand

should be paid in accordance with the terms of the confirmed plan.  For instance, the Court in *In*

*re Ulmer*, 2015 WL 3955258 (Bankr. W.D. La. 2015) stated:

> To the extent the opinion in *Harris v. Viegelahn, supra,* provoked further
> discussion as to its application in the context of dismissal of a case under Chapter
> 13, this Court finds *Harris* applies only in the instance of conversion and does not
> abrogate 11 U.S.C. § 1326(a)(2).

*Ulmer*, 2015 WL 3955258 *1. The court further concluded that "[t]he trustee must comply with

*Harris v. Viegelahn, supra*, if the case is converted.  If the case is dismissed the Trustee should

comply with 11 U.S.C. § 1326(a)(2) . . .." *Id.* at *3.

Other courts have used §348 as the basis for their reasoning to decline to apply *Harris* in

the context of post-confirmation dismissals.  The Court in *In re Cole*, 2017 WL 1483327 (D.N.J.

2017) found the distinction between §348 (governing conversions) and §349 (governing

dismissals) as determinative in declining to pay to a debtor unclaimed funds.  The court

reasoned:

> In essence, *Harris* is a case of statutory interpretation of Section 348; the
> provision of the Bankruptcy Code that governs the effect of conversion of a case
> from one chapter to another.  But here, Appellant's case was dismissed.  Thus,
> Section 348 is inapplicable. "Unlike conversion of a [C]hapter 13 case which is
> governed by [Section] 348, dismissal of a [C]hapter 13 case is governed by
> [Section] 349". *Harris* does not interpret Section 349. Moreover, the critical
> language of Section 348 that the Supreme Court relied on in *Harris* does not
> appear in Section 349.  Namely, Section 349 does not address the termination of
> the trustee's services or that absent bad faith, post-petition funds belong to the
> debtor.  As a result, because *Harris* only addresses Section 348 and not Section
> 349, it is not controlling on Appellant's underlying bankruptcy case.

*Cole*, 2017 WL 1483327 at *3 (internal citations omitted). *See also In re Darden*, 474 B.R. 1,

(Bankr. D. Mass. 2012) (statutory analysis of § 1326(a)(2) directs the Trustee to disburse funds

to creditors and that directive is not contingent on whether the case is dismissed because since §349(b)(2) does not vacate the confirmation order).

The Trustee submits that the decisions authorizing the trustee to disburse the balance on hand to creditors upon dismissal post-confirmation provide the better reasoned approach.  In the first instance, §349 governing dismissals contains no mandate that the chapter 13 trustee services terminate immediately upon dismissal, unlike §348 governing conversions relied upon by *Harris*.  And this makes sense.  In a converted case, the estate will immediately be appointed a new trustee.  Indeed, §701(a)(1) provides that "*promptly* after the order for relief under this chapter, the United States trustee shall appoint *one* disinterested person . . . to serve as interim trustee in the case" (emphasis added). The immediate termination of the chapter 13 trustee's services upon conversion is logical because there cannot be two separate trustees serving in a case.  Section 349 does not contain termination language because there will be no successor trustee and the chapter 13 trustee continues to be responsible for "wind-up" tasks – including making a final distribution.

In a case dismissed *pre-confirmation*, §1326(a)(2) provides explicit direction to the trustee:

> If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors … to the debtor, after deducting any unpaid claim allowed under section 503(b).

In a dismissed pre-confirmation case, the trustee's final distribution duties are to pay the adequate protection payments that had not been previously paid or owed to creditors, to pay the §503(b) administrative expenses and then refund the balance to the debtor.  This demonstrates that the trustee's duties continue post-dismissal in an unconfirmed case as the Code requires

adequate protection payments (if owed) and administrative fees be disbursed as part of the pre-confirmation dismissal final distribution.  Further, FRBP 1019 limits a trustee's wind-up duties upon conversion, but no corresponding provision limiting the trustee's duties are found in FRBP 1017 for dismissed cases.  Since there is no limitation on "wind-up" duties at dismissal, there is no reason *post-confirmation dismissal duties*, including the final distribution, would not be as broad as pre-confirmation dismissal duties, particularly because §1326(a)(2) provides specific direction for the trustee's disbursements in both scenarios.  (*i.e.*, in accordance with the confirmed plan).

Alternatively, some courts rely on the dicta in *Harris* which rejected the §1326(a)(2) distribution of payments in accordance with the plan with a post-confirmation converted case argument: "But the cited provisions [§ 1326(a)(2)] had no force here, for they ceased to apply once the case was converted to Chapter 7."  *Harris* 575 U.S. at 520. The *Harris* Court reasoned §1326(a)(2) was no longer applicable due to the conversion.  To further bolster its reasoning that §1326(a)(2) is inapplicable to cases converted post-confirmation, *Harris* reasoned that when the statutory right to convert is exercised, "the case is placed under Chapter 7's governance, and no Chapter 13 provision holds sway."  *Id.* When a chapter 13 case is dismissed, it is not placed under chapter 7 governance, therefore the instructions for final distribution under §1326(a)(2) should continue to have effect and "sway."

Other courts in concluding funds on hand should be refunded to the debtor when a case dismisses post-confirmation rely heavily on the revesting provision of §349(b)(3), recognizing that *Harris'* §348 reliance is inapplicable.  That revesting provision states that dismissal "revests the property of the estate in the entity in which such property was vested immediately before the

commencement of the case under this title."  Section 349's revesting provision facilitates the
goal of dismissal to "undo the bankruptcy case, as far as practicable, and to restore all property
rights to the position in which they were found at the commencement of the case."  *Czyzewski v.
Jevic Holding Corp.*, 580 U.S. 451, 466 (2017) (quoting H.R. Rep. No. 95-595 at 338 (1977)).
However, the reliance on §349's revesting provision is not without flaws.

Generally, chapter 13 payments are comprised of post-petition wages, which become
property of the estate under § 1306(a)(2) (earnings from services performed by the debtor during
the case).  Section 349(b)(3) provides that upon dismissal, "property of the estate" revests "in the
entity in which such property was vested immediately before the commencement of the case."
The Court in *In re Demery*, 520 B.R. at 226, made asserted that property of the estate which
revests in the debtor post-dismissal includes post-petition earnings: "11 U.S.C. §349(b)(3) is
unambiguous. At dismissal, all of the debtor's post-petition earnings revest in the debtor unless
the court orders otherwise for cause."  The Trustee disagrees *Demery*'s definitive statement.

While §1306 states debtor's post-petition wages are included in property of the estate, it
is erroneous to conclude that those post-petition wages revest in the debtor *as property which
was vested in the debtor before the commencement of the case*.  Indeed, post-petition wages did
not even exist prior to commencement of the case so it is difficult to conceive how they could
have been vested in the debtor pre-petition.  Moreover, it is difficult to reconcile vesting of post-
petition wages under §349 with their treatment under § 348.  In a case converted from chapter 13
to chapter 7, a debtor's post-petition wages do not become part of the converted chapter 7 estate
under §348(f)(1)(A) because they are not property "as of the filing of the petition, that remains in
the possession of or under the control of the debtor on the date of conversion" – they only arose

12

post-petition and could not have been "possessed" or "controlled" by the debtor on the petition
date. That same concept should apply to post-petition wages in dismissed cases governed by
§349: post-petition wages did not exist before the commencement of the case and therefore
conceptually cannot *revest* upon dismissal as property which was vested in the debtor pre-
petition. Therefore, Debtor's post-petition wages on hand at dismissal post-confirmation should
be disbursed to creditors under §1326(a)(2) in accordance with the confirmed plan.

In addition, §349 applies to bankruptcy cases in all chapters of title 11, whereas § 1326
applies solely to chapter 13 cases. Traditional principles of statutory interpretation mandate that
the "specific governs general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S.
639, 645 (2012) (citation omitted). When two provisions in a statutory scheme address the same
subject matter, the more specific provision should take precedence over the more general
provision. *In re Kirk*, 537 B.R. 856, 860 (Bankr. N.D. Ohio 2015) ("this Court finds that the
specific directives in §1326(a)(2) control over the general directive in §349(b)(3)"). "To
eliminate the contradiction, the specific provision is construed as an exception to the general
one." *RadLAX* at 645. In cases dismissed pre-confirmation, §1326(a)(2) is given precedence
over the vesting provisions of §349(b)(3) when making final distributions. That is, any unpaid
adequate protection payments and allowed § 503(b) claims are paid before remaining funds are
paid to – or revested in -- the debtor. It appears inexplicably inconsistent that paying certain
claims under §1326(a)(2) when a case dismisses pre-confirmation does not violate §349(b)(3)'s
vesting provisions, but paying creditor claims under a different sentence of §1326(a)(2) when a
case dismisses post-confirmation does violate them. The Trustee requests that Court apply
§1326(a)(2) consistently, whether dismissal occurs pre-confirmation or post-confirmation.

The Trustee submits that §1326(a)(2) applies to all payments, pre- and post-confirmation. The title of §1326, after all, is "*Payments*," not "*Pre-Confirmation Payments*." A historical review of the initial text of §1326 in 1978 finds the purpose was to prioritize payment of administrative fees to current and former trustees ahead of payments to creditors.[2] The 1984 amendments inserted what are now subsections (a)(1) and (2) into the Code text. The cases limiting application of §1326(a)(2) to only pre-confirmation final distributions fail to recognize the historical evolution of §1326(a)(2). Further, the direction given in §1326(b) regarding treatment of certain claims in a chapter 13 case makes clear the section applies to pre- and post-confirmation plan payments. The claims listed in §1326(b) are the type that generally would not be paid prior to confirmation and would instead be part of the distributions post-confirmation.

For all of the foregoing reasons, the Trustee urges the Court to conclude that if a chapter 13 case dismisses post-confirmation, the balance on hand at the time of dismissal held by the Trustee should be disbursed to creditors in accordance with the confirmed plan pursuant to §1326(a)(2) and not revested and returned to the debtor under §349(b)(3).

### The Provisions of the Confirmation Order Should Govern

The Trustee submits that the specific language included in the Confirmation Order allows the final distribution of the balance on hand in accordance with the Debtor's Plan. The Dismissal Provision in the Confirmation Order includes specific direction that Plan contributions

---

[2] Original text: (a) before or at the time of each payment to creditors under the plan, there shall be paid – (1) any unpaid claim of the kind specified in section 507(a)(1) of this title; and (2) if a standing trustee appointed under section 1302(d) is serving in the case, the percentage fee fixed for such standing trustee under section 1302(e) of this title.  (b) Except as otherwise provided in the plan or in the order confirming plan, the trustee shall make payments to creditors under the plan.

received prior to the entry of the dismissal order will be paid out pursuant to the Plan.[3]  The

Confirmation Order is not an order that is vacated upon dismissal.  *See* § 349(b)(2).  An order

confirming a chapter 13 plan is a final judgment.  *United Student Aid Funds, Inc. v. Espinosa*,

559 U.S. 260, 269 (2010).  In *Espinosa* the Court held that even though the provisions of a

confirmed plan that granted a hardship discharge of student loan debt did not comply with

§523(a)(8), the parties were bound by the terms the confirmed plan and the hardship discharge

was enforceable.  *Id.*  If this Court believes that §349(b)(3) vests the balance on hand in the

debtor, under *Espinosa*, the Trustee submits, the Confirmation Order still should control the final

distribution of the balance on hand.

A similar dismissal provision was examined by the court in *In re Fam*, 645 B.R. 1

(Bankr. D.D.C. 2022), in which it abrogated its prior decision *In re Parrish*, 275 B.R. 424

(Bankr. D.D.C. 2002) that held post-confirmation payments would be distributed to creditors

rather than the debtors upon dismissal.[4]  In *Fam,* the confirmation order included language

stating that "funds received and deposited prior to midnight of the date of entry of a dismissal

order shall be distributed in accordance with the terms of the confirmed plan, …"  *Fam*, 645 B.R.

at 3.  At the time of dismissal, the balance on hand was over $18,000, due to the accumulation of

funds after repeated delays by the debtor in selling real property; the funds were later distributed

to unsecured creditors.  *Id.* at 5.

---

[3] At the January 31 hearing, the Court questioned counsel about the timing of the funds and appeared to agree that
the nature of the funds being a creditor refund from pre-dismissal plan payment but received from creditor after
dismissal would not be designated as a payment received after entry of the order of dismissal.  The Trustee's
position remains that the creditor refund constitutes a plan contribution that was received prior to entry of the order
of dismissal as the payment was rejected by the creditor and returned for further administration by the Trustee.
[4] The *Fam* Court relies on the *Harris* dicta rejecting the § 1326(a)(2) distribution in accordance with the plan.  As
argued previously, the Trustee contends that the reliance on that dicta in dismissed cases is in error based on the
differences between §§ 348 and 349.

In its analysis to support the distribution to creditors, the Court reasoned that Congress could have included §1325 confirmation order in §349(b) as one of the orders to be vacated upon dismissal but did it not and therefore, no provision of the Bankruptcy Code vacates the confirmation order upon dismissal. *Id.* at 9.  The Court stated that practically speaking, a dismissal "may result in part or all of a confirmation order being rendered of no further legal effect" but since the confirmation order included specific language related to the distributions post-dismissal, the confirmation order was binding and enforceable post-dismissal. *Id.* at 10. The Court concluded that absent an order for cause, or other court order (including the confirmation order), the chapter 13 trustee must return funds held at the time of dismissal to the debtor.  However, in the case before it the confirmation order was a valid, binding order, the distribution to unsecured creditors was appropriate based on the Dismissal Langugae, and the debtor's motion for turnover was denied.  *Id.  See also In re Hufford*, 460 B.R. 172 (Bankr. N.D. Ohio 2011) (confirmation order set out unambiguous requirement that balance on hand would be distributed to debtor's creditors).

In the present case, the Confirmation Order has a Dismissal Provision similar to that in *Fam.*  The Confirmation Order containing the Dismissal Provision was endorsed by counsel for the Debtor on April 26, 2023.  The Dismissal Provision in the Confirmation Order has been uniformly included in confirmation orders for a substantial amount of time in this Court.  Indeed, if the Court is so inclined, a review of confirmation orders entered in the Debtor's prior cases will evidence use of the Dismissal Provision as far back as 2008.[5]  It is likely the Dismissal

---

[5] Case 08-26340: docket 21 Confirmation Order, paragraph 20; Case 09-31922: docket 32 Confirmation Order, paragraph 21; Case 11-32035: docket 19 Confirmation Order, paragraph 27; Case 18-29576: docket 25 Confirmation Order paragraph 16.

Provision was added to the confirmation orders at some point to make clear the practice of making creditor distributions from the balance on hand pursuant to §1326(a)(2) in dismissed post-confirmation cases. Thus, certainly in the present case, the Court should grant the relief requested by the Trustee as articulated in the Confirmation Order.

The Trustee is aware that after *Espinosa*, the Court has an obligation to require a confirmation order to comply with the provisions of the Bankruptcy Code under §1325(a)(1). *Espinosa*, 559 U.S. at 277. The Trustee contends that the current procedure being used in this Court does comply with provisions of the Bankruptcy Code, as shown above in analyzing the interplay of §1326(a)(2) and §349. Nevertheless, the Trustee is aware that the Court may rule otherwise when presented with future confirmation orders. Even if the Court disagrees with the Trustee's interpretation of §1326(a)(2) and §349, the Court's interpretation should be limited to cases in which the Dismissal Provision is not included in the Confirmation Order.[6]

### "Cause" Exists to 'Order Otherwise" and not Require Revesting of Funds on Hand to the Debtor Under §349

If the Court is unconvinced by the previous arguments for granting the relief requested, the Trustee contends that cause exists to "order otherwise" and order that funds on hand not be refunded to the Debtor. "Cause" is not defined by the Bankruptcy Code, instead allowing bankruptcy courts to grant equitable relief based on individual cases and circumstances. *In re Darden*, 474 B.R. at 12. A finding of "cause" does not necessarily require a finding of bad faith and instead may be that given the "duration of the time in which the debtor enjoyed the benefit of the automatic stay, it would be inequitable to creditors to authorize dismissal without distribution

---

[6] In dismissal orders prepared by the Trustee after confirmation, language is included that provides funds on hand to be disbursed pursuant to the Confirmation Order. See Debtor's prior case 18-29576 docket 41.

of monies accumulating during the case for payment to them, the quid pro quo for their having suffered the effects of bankruptcy's automatic stay." *Id.* at 13.  In *In re Haddad*, 572 B.R. 661, 676-677 (Bankr. E.D. Mich. 2017), a failure to disclose a post-petition cause of action and settlement proceeds along with the length of time the automatic stay was in place (denying unsecured creditors their ability to collect on their debts) was found to be cause to distribute funds to creditors.

Here, cause exists to order otherwise under §349(b) and allow the Trustee to pay the balance on hand to the creditors pursuant to §1326(a)(2).  The Debtor is a serial filer with the current case being her eleventh bankruptcy case since 2008.  In addition, though not in technical violation of the Transfer Provision in the Confirmation Order, the Debtor was undoubtedly in contemplation of conveying the real property while she was in her bankruptcy case and provided no written notice to the Trustee of the impending transfer.  A review of the claims register finds that several debts listed have been in existence as far back as 2016.  The Trustee has reached out to counsel for Global Loan Servicing and has been advised that the second mortgage was paid off and an amended claim evidencing that should be forthcoming.   Based on the length of time the current case was pending, the Debtor's filing history, Debtor's failure to disclose her intent to transfer the real property, and now the transfer of the real property foreclosing unsecured creditors from obtaining judgment liens on the asset, cause exists to grant the relief requested by the Trustee.

Moreover, as noted in *Darden* discussed above, policy and equitable considerations may be part of the court's analysis in determining whether to disburse funds on hand to creditors upon post-confirmation dismissal.  The Trustee submits that the Court may consider the impact on

creditors and, indeed, the impact on the bankruptcy system as a whole, if funds on hand are

refunded to debtors when cases dismiss post-confirmation.  A determination that funds should be

refunded to debtors could encourage debtors to delay confirmation, languish in chapter 13 for a

substantial time and dismiss their cases shortly after confirmation – all the while obtaining the

benefit of a virtually "free" automatic stay and enjoying the other benefits afforded by

bankruptcy.  In essence, such debtors could hold their creditors at bay for a significant period of

time while perhaps only paying a filing fee and possible adequate protection to secured creditors.

Sound policy should not encourage potential abuses of the bankruptcy system.  Particularly when

considering the issue at hand, where two separate Code provisions are susceptible to justifiable

interpretations but lead to dramatically different results, the interpretation which supports the

better policy outcome – and which discourages potential abuse – should be the preferred

interpretation.  The Trustee believes that disbursing the balance on hand to creditors in

accordance with the confirmed plan represents the more sound policy.

### The Re-allocation of Funds to Unsecured Creditors as a Base Plan

At the January 31, 2024 hearing the Court requested counsel to address the

appropriateness of the relief requested as it appeared the requested relief would modify the plan

from payments being primarily earmarked for mortgage arrears to being re-allocated to

unsecured creditors.  As a related issue, the Trustee submits that the funds at issue herein are

Plan payments previously paid by the Debtor, known as a creditor refund.  They are not

unclaimed funds as defined by 11 U.S.C. § 347 because the funds were successfully disbursed to

the creditor and rejected.  *In re Dubose*, 555 B.R. 41, 45 (Bankr. M.D. Ala. 2016).  The funds

returned from Select Portfolio Servicing are from the previously paid plan payments.  The

Trustee requests that no further payment be made to Select Portfolio Servicing (as the funds have been returned and are not being accepted) and instead the funds be re-allocated to unsecured creditors in accordance with the confirmed plan as required under § 1326(a)(2).

The Confirmation Order has a Base Provision that provides the return to unsecured creditors would be the amount listed in the Confirmation Order or the 36-month plan base.[7] This same requirement is found in Local Rule 2083-2(m)(1):

> Unless the Plan proposes 100% payment to all claims, the return to unsecured creditors shall be the greater of the amount specified in Part 5.1 or the pro rata distribution, if any, resulting from the Plan payment in Part 2.1 multiplied by the applicable commitment period, plus tax refunds and other payments designated as lump sum plan contributions.

In all practicality, nearly every over-median case becomes a base plan case due to events that impact distributions including Trustee fee adjustments, secured claim interest accrual, tax refunds, abatements and additional attorney fees. Based on the nature of the 60-month minimum / 60-month maximum of over-median cases, they almost always will convert to a base plan.

This process of re-allocating the distribution of plan payments to unsecured creditors in an amount greater than the confirmation order requires is not unusual in other jurisdictions.[8] In *In re Hoffman*, 2019 WL 1271457 (Bankr. W.D. Va.2019), the court ruled that a student loan creditor's return of funds in a pot [base] case should be distributed in accordance with the

---

[7] Similar language can be found as far back as the Confirmation Order entered in Debtor's case 11-32035, paragraph 3. This language was not included in the 2009 Confirmation Order. It appears this provision in Confirmation Orders may have been added based on Judge Mosier's decision in *In re Timothy*, 08-28332 (May 12, 2009) to require a 60 month temporal requirement on over-median cases with a negative disposable monthly income on the Form 22C-2 distinguished from a monetary requirement.

[8] Some districts call what Utah terms a base plan, a pot plan, referring to the plan payments are all placed into a pot and the first servings from the pot pay per order of distribution (administrative, secured and priority claims first) leaving whatever remnants left in the pot to unsecured creditors. Utah uses the term pot plan to refer to a plan that has a required return from either § 1325(a)(4) or 1325(b)(1)(B) – the required return is the pot from which all unsecured creditors are served in equal portions. In this section, if the jurisdiction cited refers to a plan as pot plan, but in Utah would be a base plan, the designation will reflect pot [base] plan or case.

confirmation order to other unsecured creditors.  In *In re Bacon*, 274 B.R. 682 (Bankr. D. Md. 2002), the return of funds to the trustee from a refinanced mortgage claim was appropriately disbursed to unsecured creditors despite the plan proposing no payment to unsecured creditors as the total plan amount of $24,000 was required by the confirmation order.  *See also In re Begoun*, 2019 WL 3763935 (Bankr. N.D. Ill. 2019) (the secured creditor's return of funds in a pot [base] plan belonged to the pot that all creditors were being paid from and should remain available to be distributed according to the plan) and *In re Faidley*, 2014 WL 4925886 (Bankr. N.D. Ohio 2014) (after finding the plan was pot [base] plan instead of a percentage plan, the increased distribution to unsecured creditors was not in error because the total amount distributed was less than the base amount in the confirmation order).  Based on the Base Provision in the Confirmation Order, the Trustee asserts that distributing the balance on hand to unsecured creditors is an appropriate disposition of funds and the proposed re-allocation should be granted.

WHEREFORE, based on the reasoning above, the Trustee respectfully requests an order that Select Portfolio Servicing shall receive no further distribution on its claim (Claim # 8) and that the returned funds in the amount of $6,914.48 be re-allocated to the unsecured class pursuant to the confirmed Plan.

DATED this 1st day of March, 2024.

/s/ Tami Gadd
TAMI GADD
Attorney for Chapter 13 Trustee


**CERTIFICATE OF SERVICE**

Service of the foregoing paper was served to the parties and in the manner designated below:

By Electronic Services:  I certify that the parties of record in this case as identified below, are registered CM/ECF users and will be served through the CM/ECF system:

Michael J. Watton – Attorney for the Debtor

The undersigned hereby certifies that an electronic mail was addressed to address below and sent on March 1, 2024.
Natalie Ann Allred
Via email: <natallred7@gmail.com>

The undersigned hereby certifies that a true and correct copy of the foregoing paper was addressed to the following parties and deposited in the U.S. Mail, first-class postage prepaid, on March 1, 2024:

Natalie Ann Allred
1629 North Blue Peak Road
Tooele UT 84074

/s/     tlg
Office of the Chapter 13 Trustee